**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**WALTER C. SMITH, III,**

**Defendant.** **Case No. 06-cr-30070-DRH**

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I. INTRODUCTION

Before the Court is defendant Walter C. Smith, III's Motion for a New Trial, made pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 33** (Doc. 156). The Government has filed its opposing Response (Doc. 157) and the issues are now ripe for determination. Defendant was charged, in a Superseding Indictment, with eight separate counts as follows: Count 1 - conspiracy to distribute and possess with intent to distribute 50 grams or more of "crack" from on or about January 1, 2004 through at least May 17, 2006; Count 2 -possession with intent to distribute 43 grams of cocaine on or about January 21, 2005; Count 3 - possession with intent to distribute 8.4 grams of "crack" on or about January 21, 2005; Count 4 - distribution of 5 grams or less of "crack" on or about August 18, 2005; Count 5 - distribution of 5 grams or less of "crack" on or about August 22, 2005; Count 6 - distribution of 5

grams or less of "crack" on or about March 6, 2006; Count 7 - distribution of 5 grams or less of "crack" on or about May 17, 2006; and Count 8 - possession with intent to distribute 15.7 grams of "crack" on or about May 17, 2006.

On October 22, 2007, the jury returned a verdict of guilty as to all Counts against Defendant (Docs. 145-153). In his Motion, Defendant raises several issues he believes are legally sufficient grounds for granting a new trial. However, the Court does not agree and for reasons discussed herein, denies the Motion. Further, although Defendant requests a hearing, one is not needed for the Court to rule on the Motion.

## II. DISCUSSION

### A. Legal Standard

Under **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, a defendant may move for a new trial. Upon review, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." **FED. R. CRIM. P. 33(a)**. If the basis for seeking a new trial is not due to new evidence, then the Court must determine if a new trial is warranted because there exists a "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." ***United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citing *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996))**. A new trial may also be warranted where a "trial errors or omissions have jeopardized the defendant's substantial rights." ***United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (citing *United States v. Kuzniar*, 881**

**F.2d 466, 470 (7th Cir. 1989))**. Such a determination is completely within the Court's sound discretion . ***Id.*** **(citing *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir. 1984))**. However, the Court should be mindful that the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" ***United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990))**.

**B. Analysis**

**1. Failure to Declare a Mistrial - Extraneous Comment of Juror A**

During the trial, one juror ("Juror A") brought it to the Court's attention that he no longer felt he could serve on the jury because he was concerned for the safety of his family. The Court conducted the appropriate inquiry with Juror A, asking him whether he felt he could remain impartial in rendering a verdict. Juror A did not feel that was possible and so the Court replaced Juror A with an alternate juror. During this voir dire, Juror A told the Court he had only made one comment to another juror ("Juror X"), stating that this case was hitting too close to home, but that he could not recall the identity of the juror.

The Court memorialized its voir dire with Juror A on the record, in the presence of the Government and Defendant's counsel. When Defendant's counsel moved for a mistrial, voicing his concern that there was no way to tell what effect Juror A's comment to Juror X had on the jury, the Court responded that it was unable to voir dire Juror X because Juror A was unable to identify him or her.

Further, the Court explained that the statement "It's getting close to home," was "so innocuous" that "it could have meant anything." No other jurors lived near Juror A, so the Court did not believe that Juror A's comment would have a negative impact on Juror X or the remaining jurors. Therefore, the Court denied Defendant's motion for mistrial.

Defendant, as grounds for a new trial, argues that because the Court was unable to ascertain the identity of Juror X, there was no way to tell if Juror A's statement had any effect on Juror X or other negative impact on the remaining jurors. In sum, the Court should have granted a mistrial and its failure to do so had a prejudicial effect upon the jury's verdict, The Government opposes Defendant's assertion that Juror A's statement to Juror X negatively impacted the jury to Defendant's prejudice. First, the Government points out that at the close of the case, the jury went through lengthy deliberations, which negates the assumption that Juror X was negatively impacted by Juror A's statement and, as a result, was able to lead the jury to reach a quick verdict. Next, the Government points out that the statement itself, "hitting close to home," made by Juror A, is "innocuous" and thus should not require further inquiry. In support, the Government cites the Seventh Circuit cases of ***Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)** and ***Evans v. Young*, 854 F.2d 1081, 1083-84 (7th Cir. 1988)**.

In ***Wisehart***, the Seventh Circuit held that "the extraneous communication to the juror must be of a character that creates a reasonable

suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury. How much inquiry is necessary (perhaps very little, or even none) depends on how likely was the extraneous communication to contaminate the jury's deliberations." **408 F.3d at 326**. Previously, in ***Evans***, the Seventh Circuit advised that the trial court has substantial discretion in determining the potential effect the extraneous communication could have on the jury and in fashioning appropriate means to remedy any negative impact. **854 F.2d at 1084**.

The Court does not find Defendant has met his burden under **Rule 33** to show that the Court erred in denying his motion for mistrial, nor that such error had a prejudicial effect upon the jury's verdict. True, the verdict found Defendant guilty on all Counts, but the Court, in its discretion, found that the comment was not specific enough to raise concern that it had a negative impact on any of the jurors. Moreover, the Court believes the weight of the evidence is what ultimately lead to the jury verdict against Defendant – not the extraneous comment of Juror A. Thus, a new trial in this regard is unwarranted.

**2. Inquiry Regarding Juror B's Verdict**

After the Court read the jury verdict aloud, it polled the jury to verify that each juror had agreed to the verdict and still agreed that it was their verdict. One of the jurors ("Juror B") hesitated when answering the Court, appearing emotionally troubled. The Court acknowledged on the record that Juror B appeared

to be having some difficulty answering and asked whether she had any hesitancy about these verdicts. Juror B answered that she did not have any hesitancy about these verdicts, but stated that it was "difficult" for her. Her answer prompted the Court to ask if she believed in the verdict, to which Juror B answered that she did and that she was not forced against her will to sign the verdict form. Juror B then confirmed to the Court that the verdict was her verdict as to all Counts (including three special verdicts) and remained her verdict.

Defendant's counsel, outside of the presence of the jury, requested that the Court talk to Juror B about her verdict away from the 11 other jurors, believing she might be more apt to speak freely about her hesitancy in answering during the poll. As Defendant offers no new evidence to support this same objection he made during trial, the Court will look as to whether there was a trial error and whether it had a prejudicial effect upon the jury's verdict. First, case law does not support Defendant's theory that the Court should have further inquired into Juror B's hesitancy outside of the presence of the remaining 11 jurors. In ***Siverson v. O'Leary***, when discussing whether to conduct a second jury poll when jurors cry or otherwise show emotion as the verdict is returned, the Seventh Circuit stated:

> [A]greement with a verdict does not require pleasure in its announcement. A juror may display unhappiness with a verdict, or reluctance or sadness in its rendition, but still believe in its correctness. A juror may cry over a verdict in which he or she has participated without in any way evidencing disagreement with it. Few jurors relish a finding of guilty.

**764 F.2d 1208, 1220 (quoting *United States v. Musto*, 540 F. Supp. 318, 342**

**(D. N.J. 1982)(alteration in original)**.

In other words, ***Siverson*** noted that "jurors' expressions of emotion are inherently ambiguous." ***Id.*** Therefore, the Seventh Circuit determined that other "factors" must be present "to raise suspicion about the integrity of the jury verdicts," to conclude that the "manifestations of emotion by several individual jurors might fit into an overall picture indicating a reasonable possibility of compromised verdicts." ***Id.***

In this case, the Court conducted a thorough subsequent jury poll of Juror B after she hesitated when giving her answer. Upon further questioning, as shown by the record, Juror B unequivocally confirmed the verdict as being her own and stated that she was not coerced into signing the verdict. Case law does not suggest that a juror should be questioned in private or away from the remaining jurors, nor does Defendant cite any case law advancing this proposition. Therefore, the Court does not find grounds for a new trial.

**3. Jury Instruction 29**

Defendant objects to the Court giving Jury Instruction 29, but fails to articulate any reasons supporting his objection. Jury Instruction 29 read as follows:

> To find that a substance is cocaine base commonly known as crack, there is no requirement that you find the presence of sodium bicarbonate (baking soda).

This instruction, offered by the Government and given over Defendant's objection, was derived from ***United States v. Lake*, 500 F.3d 629, 634 (7th Cir. 2007)**. The

Government offered this instruction to support the fact that legally, it is not bound to test for the presence of sodium bicarbonate in a cocaine base sample. It was offered to counter any suggestion Defendant's counsel made to the jury that the substance was not, in fact, "crack," because the Government did not present evidence that sodium bicarbonate was present. Sodium bicarbonate, as noted by the Government in its Response, is not the only method used to turn cocaine into cocaine base, formally known as "crack." The Government states Edith Fletcher testified that Defendant used both the "baking soda" method and another method to make crack. Forensic chemists, the Government asserts, are not limited to testing for sodium bicarbonate when determining whether a sample is "crack."

In ***Lake***, a chemist, forensic scientist, a DEA lieutenant and a former crack user all identified the drug as "crack." **500 F.3d at 634**. The Seventh Circuit found this testimony provided the jury with enough evidence to conclude that the substance the defendant possessed was crack, even though there was no evidence that the substance contained sodium bicarbonate. ***Id.*** **("Although . . . crack is 'the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form' . . . we did not mandate that a substance must contain those ingredients to be crack. We have previously held that the testimony of both a forensic chemist and a veteran police officer is sufficient proof that a substance is crack.")(citing *United States v. Edwards*, 397 F.3d 570, 572 (7th Cir. 2005)**;

***United States v. Buchanan*, 362 F.3d 411, 413 (7th Cir. 2004); *United States v. Linton*, 235 F.3d 328, 329-30 (7th Cir. 2000))**. In this case, the Court found testimony offered by witnesses, including officers, chemists and former crack users, to be adequate to allow the jury enough evidence to find Defendant possessed "crack," without the need to confirm the presence of sodium bicarbonate.

Here, forensic chemists, law enforcement officers and witnesses who were or still are drug users, testified that the substance in Defendant's possession was "crack." Defendant's counsel was allowed ample leeway in his cross examination of these witnesses. The Court found the Government's tendered Jury Instruction 29 to be admissible based upon Seventh Circuit precedent and other evidence admitted during trial that the substance was "crack." Defendant failed to present any persuasive legal argument as to why the Court should rule otherwise. Therefore, he is not entitled to a new trial in this regard.

**4. Defendant's Motion in Limine**

Defendant argues that a new trial is warranted because of the Court's prejudicial error in denying his Motion in Limine (Doc. 130) regarding (1) evidence of the an October 19th sale of cocaine base by Edith Fletcher; (2) evidence of the January 7th and 19th sales of cocaine base by Virgil Green; and (3) the May 10th and 16th sale of cocaine by John Crockran. Defendant did not believe such evidence met the admissibility criteria under **FEDERAL RULE OF EVIDENCE 404(b)**, nor that such evidence could be attributable to him. Conversely, the Government argued the

evidence of these narcotics sales were "inextricably intertwined" with the conspiracy Defendant was charged with in Count I of the Superseding Indictment and was thereby admissible.

Defendant's Motion in Limine was heard by the Court, on the record, prior to the beginning of the jury trial. The Court found the Government introduced ample evidence showing that Defendant served as the source, supplying the cocaine and cocaine base used in the sales made by Fletcher, Green and Crockran. Therefore, the Court concluded that the evidence of these sales was "intextricably intertwined" with the conspiracy and as such, was admissible. Defendant's Motion in Limine regard evidence of these sales was denied. In the instant Motion, Defendant offers no new evidence or other legal argument to convince the Court that its previous ruling was not proper. Therefore, the Court finds its reasoning sound and does not find this issue warrants a new trial.

**5. Purchase Agreement**

Defendant argues that the Court committed prejudicial error in allowing Exhibit 73 into evidence. The Government's Exhibit 73 was a handwritten document for the purchase of real property known located at 1837 Arkansas. This document was discovered by law enforcement officers while executing the May 17, 2006 search warrant of Defendant's residence. At trial, Defendant objected to its admission, arguing that it was not a sufficient document to constitute a legally binding purchase agreement, as it did not have the signature of the seller or a legal description of the property. The document itself was entitled "Purchase Agreement for 1837 Arkansas"

and stated:

> I, Walter C. Smith, III, do agree to pay the sum of $5,500 to Tony Williams in monthly payments of $400 per month, in two payments per month of $200 every month until paid off. The property is located in Royal Lakes subdivision.

Exhibit 73 was admitted by the Court over Defendant's objection. Notwithstanding whether the document itself met all the legal requirements to constitute a binding purchase agreement, the Court found that the document served as relevant evidence to contradict the notion Defendant attempted to establish during trial that he was not linked to the property located at 1837 Arkansas. In the instant Motion, Defendant simply regurgitates the argument made during trial regarding his objection to Exhibit 73. Thus, a new trial in this regard is unwarranted.

**6. Cell Phones**

When law enforcement officers executed a search warrant for 1837 Arkansas, they also searched an automobile parked by a trailer located behind 1837 Arkansas. In this automobile, the officers removed two cell phones. Defendant previously filed two Motions to Suppress regarding the search warrant for 1837 Arkansas (Docs. 19 & 69). The Court denied a hearing on the merits of these motions, finding Defendant failed to make a substantial preliminary showing necessary to obtain a ***Franks*** hearing (Doc. 82). ***Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)**. Moreover, during trial, the Government moved to admit the two cell phones together into evidence as Exhibit 33. When the Court asked Defendant's counsel if he had any objections, he answered "no." Thus, the cell

phones were admitted as Exhibit 33.

Defendant now asserts that this was prejudicial error and requests a new trial on this basis. Failure to object to the admission of an exhibit during trial will not subsequently present valid grounds supporting a motion for new trial. In other words, by failing to object to admission of the exhibit at trial, counsel has waived this as grounds for appeal. ***See Bankcard America, Inc. v. Universal Bancard Sys., Inc.*****, 203 F.3d 477**, **481-81 (7th Cir. 2000)("Without this [waiver] rule, litigants would sit on their hands, wait to see the result of the litigation, and then if the outcome is unfavorable come back and complain about a problem that could have been avoided."); *see also United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004)("When trial counsel affirmatively represents that he has no objection to the admission of certain evidence, he has intentionally waived any argument to the contrary.")(internal citation omitted)**. The Court is aware that this issue is presented on a post-trial motion and not on appeal. However, counsel's failure to object during trial, coupled with the waiver rule and the fact that his Motion to Suppress did not warrant a hearing, gives the Court enough assurance that admitting Exhibit 33 into evidence did not constitute prejudicial error warranting a new trial.

**7. Motion to Suppress**

Defendant argues that the Court committed prejudicial error in denying his Motion to Suppress. As stated in the previous section of this Order, the Court

found that Defendant had not made a substantial showing to warrant a ***Franks*** hearing on his Motions to Suppress. Defendant fails to advance any further argument, aside from the blanket statement that "[t]he Court should not have denied the Defendant's Motion to Suppress" (Doc. 156, p. 3). Although Defendant states that he incorporates the earlier arguments from in his Motions to Suppress into the instant Motion, it is clear that his earlier arguments were insufficient. Hindsight has not proven otherwise. This does not, therefore, present adequate grounds for granting a new trial.

**8. Verdict Against the Manifest Weight of the Evidence**

Defendant asserts that a reasonable jury would not have found the Defendant guilty beyond a reasonable doubt and thus, this presents grounds for a new trial. However, the Defendant does not expound *why* the jury rendering the verdict against Defendant was unreasonable or what about the evidence would have lead a reasonable jury to conclude that the Government did not meet its burden of proof. The Court finds there was sufficient evidence presented to the jury to meet each of the requisite elements of the charged offenses against Defendant to support their verdict. This will not warrant a new trial, as the Court does not find the verdict was against the manifest weight of the evidence.

**9. Motion for Acquittal**

During trial, Defendant moved for acquittal at the close of the Government's case and also at the close of Defendant's case. Both times, the Court

denied acquittal. Defendant believes the Court's denial was prejudicial error as it went against the manifest weight of the evidence. As stated in the previous section of this Order, the Court does not find the manifest weight of the evidence supports a finding for Defendant. Rather, during trial, when considering Defendant's motions, the Court stated that there was enough evidence presented on each of the eight Counts to reach the jury for deliberation. The Court stands by its previous ruling; Defendant has not presented adequate argument to sway the Court to adopt a different view. Thus, there can be no new trial granted for this reason.

## III. CONCLUSION

The Court does not find that the issues raised in Defendant's **Rule 33** Motion for a New Trial amount to trial errors. Further, in the Court's discretion, it does not find Defendant has met his burden under **Rule 33** by demonstrating that any supposed error of the Court had a prejudicial effect upon the jury's verdict nor did it jeopardize his substantive rights in order to administer the extreme remedy of a new trial. Accordingly, Defendant's Motion for a New Trial (Doc. 156) is **DENIED**.

**IT IS SO ORDERED.**

Signed this 3rd day of December, 2007.

/s/ David R Herndon

**Chief Judge**
**United States District Court**